JOSEPH STANDLEY v. CLAY, ROBINSON & COMPANY.

FILED MARCH 18, 1903. No. 12,617.

1. **Answer: REPLY: WAIVER.** Although a defense is pleaded in an answer with lack of technical precision, so as to be obnoxious to attack in the first instance, yet, if the plaintiff reply thereto without objection, and the matter is treated upon the trial both by counsel and by the court as properly in issue, the defect can not be taken advantage of for the first time in this court.

2. **Agency: PROOF.** The existence of an agency, and the nature and scope of its powers, may be proved by the course of dealing between the persons alleged to sustain the relation of principal and agent, and between the latter, with the consent of the former, and third persons.

ERROR to the district court for Douglas county: IRVING F. BAXTER, DISTRICT JUDGE. *Affirmed.*

*C. M. Williams, E. G. McGilton* and *Prigg & Williams,* for plaintiff in error.

*L. F. Crofoot* and *Edgar H. Scott, contra.*

AMES, C.

One H. H. Farabee, a resident of Lincoln county, in this state, purchased a herd of cattle of a corporation engaged in the live-stock commission business at Denver, Colorado, and put the animals upon premises belonging to him at Wallace, in that county. At the time of the purchase he executed to his vendor a negotiable promissory

note, secured by a mortgage upon the live stock, which was duly executed and made of record. Within a few days afterwards the commission company indorsed the note, and, for a consideration, sold and delivered it, together with the mortgage, to the Denver National Bank. At the time of the purchase Farabee obtained from the commission company a herd of heifers, which were also put upon his premises, and which he undertook to sell as agent. There is evidence tending to show that a few weeks afterwards it was agreed between the commission company and Farabee that the latter should become the purchaser of the heifers, and should have permission to sell a part of the mortgaged cattle as a means of raising money to pay for them. Pursuant to this agreement, as is alleged, Farabee did sell 155 of the animals in the open market at South Omaha to the defendants Clay, Robinson & Co. and absconded with the proceeds of the sale. Clay, Robinson & Co., who were also live stock commission dealers, immediately sold the cattle to their customers. Of all these facts, until after they had occurred, the bank remained in ignorance, unless it had constructive notice of them by reason of the circumstances below stated. Shortly afterward the plaintiff Standley, who is a director in the bank, purchased the rights of action of that institution arising out of the transaction, and begun this action to recover the value of the cattle so sold. It is not contended that the rights of the plaintiff as a litigant are superior to what would have been those of the bank.

It is pleaded as a defense that whatever title or interest the bank acquired in the note and mortgage, it obtained by discounting them from the commission company, and that as a part of said transaction the latter was, by an expressed or implied agreement with the bank, "authorized and empowered to look after the mortgage security and to make all arrangements with the said Farabee regarding the disposition and sale of said mortgaged cattle." It was further alleged that this agreement and authorization were evidenced by the fact that it was and

had been customary with this bank, and with other banks in the city of Denver, to entrust such powers to the commission company and to other persons engaged in like business in all cases of the discounting of securities of like character. Some objection is made in the plaintiff's brief to the technical sufficiency with which this defense is pleaded, but the answer was not attacked in this respect in the court below, either by motion or demurrer, and the record shows conclusively that it was treated upon the trial, both by counsel and by the court, as tendering the principal issue in the case. The rule is well settled in this court that under such circumstances the pleading will be upheld if by a liberal construction it can be said to present a cause of action or defense. *Fire Ass'n of Philadelphia v. Ruby,* 60 Neb. 216; *First Nat. Bank of Cobleskill v. Pennington,* 57 Neb. 404.

A sufficient amount of evidence to establish the existence of the course of dealing outlined in the answer, both by the Denver National Bank and by other institutions of like character, was offered and received on the trial. Part of this evidence was received without objection, and part of it over an objection for incompetency, but none of it was incompetent if the matter pleaded constituted a valid defense. Or, to be more accurate, there can be no doubt that it was competent for the bank to appoint the commission company as its agent for the purposes and with the powers alleged in the answer, and the real question is whether such appointment is sufficiently proved, in the absence of other evidence, by the course of dealing outlined in the pleading and established by the testimony. The question was submitted to the jury by the following instructions, which were excepted to:

"13. You are instructed that the defendant claims that there was and is a custom or usage existing among live-stock commission men and banks, which deal in cattle paper, by which when cattle paper secured by mortgages upon cattle, is discounted or sold to banks, that it becomes the duty of the commission man to look after the chattel

security and see to and look after the sale and disposition
of the same, directing the manner and place of sale, etc.,
and to see that the proceeds arising from the sale of the
cattle so mortgaged are applied to the satisfaction of the
mortgage debt, which custom defendant claims existed
between the Denver National Bank and the Sigel-Cam-
pion Live Stock Commission Company, and that such
general custom was well known to the said bank and to
the said live-stock commission company; that by reason
of such custom the said live-stock commission company
had the authority and the right to consent that Farabee,
the mortgagor of the cattle in question, might sell and
dispose of the cattle described in said mortgage, and that
the said commission company did in fact so consent that
the said Farabee might sell and dispose of the mortgaged
cattle, collect the proceeds, and account for the same to
the said commission company, and have the proceeds
applied to the satisfaction of the mortgage debt.  I in-
struct you, therefore, that the burden of proof rests upon
the defendant to prove the existence of the general cus-
tom above referred to, and that such custom or usage was
well known and understood by both the Denver National
Bank and by the said Sigel-Campion Company, and that
when said commission company sold and transferred the
note and mortgage in question to the said Denver National
Bank, that it was presumed to have contracted with refer-
ence to such custom or usage; that the burden is also upon
the defendant to prove that the said commission company
under and by reason of such authority, did consent in
writing, that the mortgagor of the cattle in question, H. H.
Farabee, might sell and dispose of the cattle mentioned
and described in the said chattel mortgage, including the
cattle in controversy, and collect and account to the said
commission company for the proceeds thereof. And I in-
struct you further that if you find from the evidence, such
usage and custom did exist, and that the said bank and
live-stock commission company had knowledge of same,
and contracted and dealt with each other with reference

thereto, and that in pursuance thereof the said live-stock
commission company did consent to and authorize, in writ-
ing, a sale of the said cattle to the said Farabee, and that
Farabee sold same pursuant to such consent, all as alleged
and claimed by the defendant, all of which are questions
of fact for you to determine from all the evidence in the
case, then, if you so find, your verdict should be for the
defendant.

"14. The court instructs you that a usage and custom
of trade or business, in order to be binding upon the par-
ties, must be generally known and established among those
who are engaged in the business where the usage and
custom are claimed to exist, and so well settled and so
uniformily acted upon as to raise a fair presumption that
it was known to both the contracting parties, and that
they contracted in reference to it, and in conformity to it.
While a usage or custom of trade and business can not
be set up to contravene an established rule of law, or to
vary the terms of an express contract, yet all contracts
made in the ordinary course of business, without par-
ticular stipulation to the contrary, are presumed to be
made in reference to the usages and customs of such busi-
ness, if any such exists."

Concerning these instructions, counsel for plaintiff say
in their brief: "We have no fault to find with the proposi-
tion of law involved in these instructions; they state the
law in the abstract, but were not applicable to the facts
in this case; the only usage and custom alleged in the
answer of the defendant in error (see paragraph 6 of
answer, page 24 of record) was a local usage and custom,
alleged to exist in the city of Denver, and all the proof
offered was confined to banks and live-stock companies
at the city of Denver. No general custom was alleged
or proved; that is, no such general custom and usage as
would justify the court in submitting this instruction to
the jury." We think that this criticism is unsound. It
puts too much stress upon the words "usage and custom"
or, rather, it makes an inapplicable use of those terms.

Standley v. Clay, Robinson & Co.

That which was proposed by the answer, and which the evidence tended to prove, and to which the instruction called attention, was not a usage or custom changing or modifying the general rules of law, or controlling the interpretation of a contract, but a course of business tending to establish a fact, namely, the creation and scope of an agency. This is an every-day matter. It more often than otherwise happens that an agent has no specific appointment as such, and that where he has one his duties and powers are not particularly specified. When the questions arise the court inquires, what were his relations to his alleged principal and to the business and affairs of the latter? What transactions was he accustomed to conduct for his supposed employer, and what powers and authorities, with the knowledge and consent of the latter, was he in the habit of exercising concerning them?

If a bank has a teller or a corporation has a secretary, we do not necessarily inquire what functions are prescribed for him by the corporate records and by-laws, but what duties and services he is in the habit of performing, with the knowledge and approval and to the profit of his principal. If they are such as such officers in similar institutions are usually charged with, there is a presumption, often, but not always, conclusive, that he is charged with them also, but it may happen that with the knowledge and consent of his employer his activities may extend beyond the customary sphere. From a survey of all the circumstances we determine whether he is an agent at all, and, if so, what is the scope of his agency and powers. This is not at all a question of ostensible agency, in which case one may be bound by the conduct of another whom he has permitted to falsely represent himself as an agent, but it is one of actual agency, in which case the principal is bound, if the agent acts within his powers, whether the person dealing with the latter knew him, at the time, to be an agent or not. For this purpose it is not requisite to prove any custom at all, general or special, but merely the course of dealing between the supposed principal and

26

the alleged agent, and between the latter, with the consent of the former, and third persons.

Applying these principles to the case at bar, if, by the usual course of dealing between the Denver National Bank and the commission company, the latter were entrusted by the former with the management, control and disposition of mortgaged property in behalf of the former, and the disposition of the cattle which was made in this case was such as, in consonance with such habit of dealing, they had a right to make, and if in this particular instance there was no restriction upon such authority, of which there is no proof, then the act of the commission company in directing Farabee to make sale of the cattle was the act of the bank, and the institution is as much bound by it as though the direction had been given by its own president or cashier or board of directors. All these matters are questions of fact which were relevant to the issues, and fairly submitted by the court to the jury, and the verdict thereon is conclusive upon the parties.

It is therefore recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.